CHARLES S. THOMAS *vs.* CHARLES L. BARNES & another.

CHARLES L. BARNES & another *vs.* CHARLES S. THOMAS.

Suffolk.   January 15, 1892. — June 23, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Specifications — Extrinsic Evidence — Warranty.*

Duplicate papers were prepared setting forth a bilateral executory contract. One only was signed by A., one of the contracting parties, and delivered by him to B., the other contracting party. A. offered to show, in an action thereon, that it was agreed that the paper was only a partial memorandum, that it did not contain all the provisions of the contract, and that, as part thereof, B. orally warranted a refrigerator. *Held*, that the paper was consistent on its face with the view that it was intended merely as specifications, and not as containing the whole contract; that the conduct of B. in not signing it was consistent with this view, and that the question whether it was delivered by A. to B., and assented to by the latter as containing the whole contract, was one of fact for the jury, under suitable instructions.

An executory bilateral written contract may be varied by a subsequent oral agreement between the parties. The contract when modified by the subsequent oral agreement is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract.

TWO ACTIONS OF CONTRACT.

In the first action, the plaintiff, Thomas, sought to recover an alleged balance on an account annexed, the first item of which was as follows: " To amount due for repairing and fitting up store, 194 Lincoln Street and 47 Utica Street, and building refrigerator, as per contract, $900.00."

In the second action, the plaintiffs, Barnes *et al.*, sought to recover of Thomas damages for breach of contract to build the refrigerator, and upon an alleged warranty of the same, and they set up the same breaches of contract, with claims for recoupment, in defence to the first action, and alleged and claimed in both actions that the refrigerator was built in an unskilful and improper manner, and was worthless.

At the trial in the Superior Court, before *Dunbar*, J., there was evidence tending to show that, in 1886, Barnes, under the firm name of C. L. Barnes and Company, was engaged in the retail fish business, and also carried on a restaurant in connection

therewith, on Lincoln Street, in Boston; that in the summer of that year Barnes had several conversations with Thomas, who was a carpenter and builder, in relation to fitting up additional rooms for store and restaurant purposes, and building a stationary refrigerator on the premises, to be used in the business; that subsequently, and after having examined the premises, Thomas wrote two duplicate papers dated July 25, 1886, which recited the specifications, and concluded by saying, "and the said Charles S. Thomas agrees to do the labor and furnish material of the within specifications for the sum of nine hundred dollars"; that both these papers were examined by Barnes, and one of them was signed by him in the firm name and retained by Thomas, and the other, unsigned, was retained by C. L. Barnes and Company, and that neither was ever signed by Thomas; and that Thomas immediately began the work of fitting up the store and restaurant, and built a refrigerator upon the premises.

Barnes introduced evidence tending to show that the refrigerator was improperly constructed, especially in regard to the amount and kind of paper used, and the method of packing adopted, the construction of the ice box, and in other particulars, and that it was particularly unfit for the place in which it was built; and that by reason of such construction the refrigerator was worthless, and had to be torn out and discarded.

Barnes introduced in evidence the paper of July 25, 1886, and offered to show that, before or at the time it was signed by him, Thomas stated to him orally, and that the parties understood and agreed, that the paper was only a partial memorandum of their agreement, and did not express all its provisions; and that, in negotiations had prior to the time the paper was so signed, Thomas, as a part of the contract, orally warranted the refrigerator. But the judge excluded the evidence.

Barnes testified, but Thomas denied it, that after the paper was signed by Barnes, and Thomas had begun to build the refrigerator, and when he was putting on the paper before mentioned, there was a conversation between him and Barnes, in which Barnes stated that it did not seem to him that the paper was the proper thing; that he had seen refrigerators in the markets packed with shavings; but that Thomas replied that

paper was the best thing, and that he knew how to build a good refrigerator; and that finally Barnes said, "Every man for his trade," and permitted Thomas to go on. Barnes further offered to show that at this interview there was still more conversation than the above, and that Thomas orally warranted the refrigerator, and Barnes accepted the warranty; but the judge excluded the offered evidence, and all conversation relating to the warranty.

The jury returned verdicts in favor of Thomas in both actions, and the verdict in the first action was for the full amount claimed. The defendants in the first action, and the plaintiffs in the second, alleged exceptions.

The cases were argued at the bar in January, 1892, and afterwards were submitted on the briefs to all the judges.

*J. Woodbury*, for Barnes.

*C. P. Weston*, for Thomas.

MORTON, J. A paper writing signed by the parties, and purporting to set forth their whole contract, cannot be contradicted, altered, enlarged, or diminished by proof of previous or contemporaneous conversations between the parties. *Goodrich* v. *Longley*, 4 Gray, 379. *Clark* v. *Houghton*, 12 Gray, 38. *Perry* v. *Bigelow*, 128 Mass. 129. *Frost* v. *Brigham*, 139 Mass. 43. *McGuinness* v. *Shannon*, 154 Mass. 86. To add to it or take from it by such conversations would be to contradict or alter it. In the present case it appears that the contract relied on was a bilateral executory one. Duplicate papers were prepared, apparently with the expectation that they were to be signed by both parties, and one retained by each. Only one was signed, and that was signed by Barnes alone. It was given to Thomas by Barnes, and remained in his possession, but he did not sign it. Barnes offered to show that it was agreed by the parties that this paper was only a partial memorandum, and that it did not contain all the provisions of the contract, and that, as part of the contract, Thomas orally warranted the refrigerator. The paper signed by Barnes was consistent on its face with the view that it was intended by the parties merely as specifications, and not as containing the whole contract. The conduct of Thomas in not signing it was also consistent with this view. If it was delivered by Barnes to Thomas, and assented to by the latter as

containing the whole contract, then oral evidence as to previous or contemporaneous conversations would not be admissible to affect it. But whether it was so delivered to Thomas, and assented to by him, was a question of fact for the jury under suitable instructions. *Wilson* v. *Powers*, 131 Mass. 539. *Bartlett* v. *Stanchfield*, 148 Mass. 394. *Sears* v. *Kings County Elevated Railway*, 152 Mass. 151. *Durkin* v. *Cobleigh*, *ante*, 108. We think, therefore, that the evidence should have been admitted.

During the progress of the work a controversy arose as to the packing of the refrigerator. Barnes offered to show that Thomas then warranted the refrigerator, and that Barnes accepted the warranty. There was nothing in the specifications, or in the alleged contract, as to the packing, or relating to a warranty. The court excluded the testimony, but we think it should have been admitted. It is well settled that an executory bilateral written contract may be varied by a subsequent oral agreement between the. parties. *Bartlett* v. *Stanchfield*, *supra*. *Stearns* v. *Hall*, 9 Cush. 31. *Courtenay* v. *Fuller*, 65 Maine, 156. The contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract. *Munroe* v. *Perkins*, 9 Pick. 298. *Holmes* v. *Doane*, 9 Cush. 135. *Byington* v. *Simpson*, 134 Mass. 145. *Malone* v. *Dougherty*, 79 Penn. St. 46, 53. *Courtenay* v. *Fuller*, *ubi supra*. *Flanders* v. *Fay*, 40 Vt. 316. *Bishop* v. *Busse*, 69 Ill. 403. *Lattimore* v. *Harsen*, 14 Johns. 330. *Goss* v. *Nugent*, 5 B. & Ad. 58, 65. If, therefore, the paper writing had contained the whole contract as originally made, the evidence was admissible for the purpose of showing that the parties subsequently varied it. By the warranty we understand was meant that the refrigerator should be a good one, and reasonably satisfactory. Besides, the evidence offered in regard to the warranty appears to have been excluded on general grounds; otherwise, it would no doubt have appeared more specifically what the warranty was.

*Exceptions sustained.*