**Geza J. JAKO, M.D., Plaintiff,**

v.

**PILLING COMPANY, Defendant.**

**Civ. A. No. 86–1526–S.**

United States District Court,
D. Massachusetts.

Sept. 29, 1987.

Brian Cullen, Paul R. DeRensis, Deutsch, Williams, Brooks & DeRensis, Boston, Mass., for plaintiff.

Damon R. Scarano, Boston, Mass., for defendants.

SKINNER, District Judge.

This diversity action was filed in the Massachusetts Superior Court in May 1986, and was removed to this court shortly thereafter. The action named defendants Pilling Company, Frederick L. Phelps, and William H. Pilling in a seven-count complaint. A stipulation was approved on June 8, 1987, dismissing with prejudice all counts against defendants Phelps and Pilling, and Counts III through VII against defendant Pilling Company. All that remain are Counts I and II, alleging breach of contract and unjust enrichment respectively.

Count I alleges that "defendants did have a contract implied in fact and law with Dr. Jako for the period 1963–1985 and ... defendants breached their contractual obligations and agreements." Count II alleges that "due to the contract implied in fact and law with the defendants, and the factor that defendants were unjustly enriched due to his inventions and services, the defendants are required to render restitution."

The defendant has now moved for summary judgment on the plaintiff's claim and on its counterclaim for the return of a $5,000 advance made in the course of negotiations.

In order to prevail on a motion for summary judgment, the defendant must demonstrate that there are no genuine issues of material facts and that it is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c). Where the movant has met this burden, summary judgment should be granted, unless the nonmovant can establish the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). *Cf. Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (nonmovant must establish the existence of an issue of fact by substantial evidence that is both genuine and material.) A dispute about a material fact will be "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). In essence, the standard for summary judgment is the same as that for directed verdict, *id.*, 477 U.S. at ——, 106 S.Ct. at 2512, 91 L.Ed.2d at 213.

After careful review of the pleadings, of the defendant's Statement of Undisputed Material Facts submitted pursuant to Local Rule 18, and of the affidavits and accompanying materials submitted by William Pilling and Dr. Jako, I conclude that there are no genuine disputes as to any material facts, and that as a matter of law, the defendant is entitled to summary judgment. The plaintiff has not identified any dispute of fact as required by Local Rule 18. The following facts are undisputed.

In 1963, plaintiff Geza J. Jako, M.D. contacted defendant Pilling Company for the purpose of suggesting design modifications for a laryngoscope, a device used in microsurgery of the larynx, manufactured by Pilling Company. Pilling Company had manufactured laryngoscopes prior to 1963, but from 1963 through the mid- to late-1970's, virtually all of Company's laryngoscopes, as well as other instruments used in the course of larynx microsurgery, were developed substantially according to the suggestions of Dr. Jako. Following industry practice, the instruments bore the name of the physician who suggested the modification, in this instance the "Jako laryngoscope."

Dr. Jako's initial contact at Pilling Company was George Wiegand, who is now deceased. Dr. Jako does not allege that any substantive discussions took place between himself and Wiegand. Subsequently, defendant William H. Pilling became Dr. Jako's contact. At that time, Pilling was a salesman and was also in charge of new product development. William Pilling is presently vice president of Pilling Company.

Pilling Company has not compensated persons for the use of their names or ideas in relation to product development and marketing unless the idea has been patented. Dr. Jako acknowledges that he was aware of this policy. Dr. Jako does not now hold, nor never has held, any patent on any of the instruments developed as a result of his ideas.

From the outset of their relationship until 1985, the parties did not discuss compensation for Dr. Jako. Pilling Company paid Dr. Jako's travel expenses when he was asked to participate in industry sales meetings and the like. In 1964, Dr. Jako and William Pilling had a discussion wherein Dr. Jako made an allusion to compensation, but at the time, William Pilling was in no position to bind Pilling Company to a compensation arrangement, and in any event, nothing arose from this exchange. More to the point, however, Dr. Jako has acknowledged that at that time, it was his belief that it was inappropriate for physicians to receive any money for their ideas. Prior to December 28, 1984, Dr. Jako never made a demand for compensation for use of his ideas or his name, nor raised any objection to the use of his name in relation to numerous medical instruments and in catalogs and advertising.

Pilling Company did not hear from Dr. Jako from the mid- to late-1970's until December 28, 1984, at which time Dr. Jako sent Pilling Company a demand letter. The letter demanded a one percent (1%) royalty payment for all products bearing his name sold within the prior fifteen years, and a

three percent (3%) royalty payment on all future sales of similar products. In January 1985, Dr. Jako met with William Pilling and defendant Frederick L. Phelps, president of Pilling Company. At this meeting, Pilling and Phelps were adamant that the company would not compensate Dr. Jako for prior sales, but they indicated they were willing to discuss compensation for future sales. The parties did not enter an agreement, but only agreed to continue negotiating toward an agreement.

Subsequently, William Pilling and Phelps met with Dr. Jako in April 1985 at his home in Melrose, Massachusetts. The parties agreed to certain terms of an agreement, and further agreed to continue negotiations as to the remaining terms. In addition, Pilling and Phelps agreed to advance Dr. Jako $5,000 as a show of good faith. Significantly, numerous material terms were left unresolved, most notably which products would be subject to royalty payments, and what the time length of the agreement would be, although it was agreed that the agreement would be for greater than one year. No terms were reduced to writing at this meeting.

During the following nine months, the parties exchanged proposals and counterproposals, but the parties did not reach agreement. Dr. Jako does not dispute the fact that there are no signed writings by either Pilling or Phelps which can be construed as an agreement. Finally, in January 1986, Phelps terminated the negotiations.

■ Dr. Jako has put forth no evidence whatsoever that suggests that Company or any of its agents agreed to compensate him in any form or manner between 1963 and 1984. Dr. Jako can point to no evidence of conduct by or on Company's behalf that raises even a slight inference that a contract was formed. *LiDonni, Inc. v. Hart*, 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969). Further, by his own admission, Dr. Jako has stated that at all relevant times, he felt it was inappropriate that physicians receive compensation for the use of their ideas or names. Under these circumstances, any suggestion that Dr. Jako had adopted a reasonable expectation that he

would receive compensation for either use of his name or ideas is untenable. *Anisgard v. Bray*, 11 Mass.App. 726, 419 N.E.2d 315 (1981).

■ As to Count II, wherein Dr. Jako alleges unjust enrichment, Dr. Jako must once again establish a reasonable expectation that he would be paid, *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (1985) (injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations). For the reasons stated above, summary judgment must likewise be granted on Count II.

■ With respect to plaintiff's request for injunctions enjoining defendant from continuing to use the name "Jako" in any way, from using the photographic image of plaintiff in any way, and otherwise from stating, implying, or inferring a relationship with plaintiff in the course of their business, I infer from the uncontested facts that the surname "Jako" has acquired a secondary meaning. The factors to consider in determining whether a name has acquired secondary meaning are: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made to promote a conscious connection in the public's mind between the name and the holder's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Plaintiff cannot now reappropriate his surname for his exclusive use once it has acquired its secondary meaning. *See generally*, 3 *Callman*, Unfair Competition, Trademarks, and Monopolies § 19.30 (1983).

■ The defendant is entitled to judgment on its counterclaim seeking return of the $5,000 advance given to Dr. Jako in April 1985. The notation on the check stub itself, as well as the language of the accompanying letter of April 17, 1985, is unambiguous in qualifying the payment as an advance contingent on a successful resolution of the contract negotiation. As no contract was formed, the parties must be restored to their original positions, and Dr.

Jako should return the entire amount to the defendant, *cf. Doubleday & Co., Inc. v. Curtis,* 599 F.Supp. 779, 783 (S.D.N.Y. 1984).

*Conclusion*

In view of the foregoing analysis, I find that there are no genuine disputes as to material facts, and further that the Pilling Company is entitled to judgment as a matter of law on the remaining counts of the complaint. Accordingly, Pilling Company's motion for summary judgment on Counts I and II of the complaint is ALLOWED. Judgment shall enter for the defendant on Counts I and II of the complaint and judgment shall also enter for the defendant on its counterclaim in the amount of $5,000 plus interest and costs.